Peter M. GAONA, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 4752.

Court of Appeals of Alaska.

July 9, 1981.

William T. Council, Carpeneti & Council, Juneau, for appellant.

Gayle A. Horetski, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Peter Gaona appeals to this court from his conviction for assault with a dangerous weapon (former AS 11.15.220).[1] Gaona raises several issues which concern the grand jury indictment against him. Gaona argues that the prosecutor failed to present to the grand jury evidence which suggested that Gaona acted in self defense, that the prosecutor engaged in misconduct before the grand jury by failing to advise the grand jury on the law of self defense, and that the prosecutor actively discouraged the grand jury from considering self defense. Gaona further argues that he was deprived

of effective assistance of counsel because his attorney failed to move to dismiss the indictment. We have considered Gaona's points on appeal and affirm his conviction.

## STATEMENT OF FACTS

At the end of a night of drinking, Peter Gaona, age nineteen, wound up in the Frontier Saloon in Ketchikan. He had, according to his testimony, brought a handgun with him for self protection. In the Frontier Saloon, he ended up in an argument with Steve Lindberg which was witnessed by a friend of Lindberg's, Al Spromberg. How the argument began is not clear, probably because Gaona, Lindberg, and Spromberg were all intoxicated. However, Gaona left the bar sometime after the argument and Lindberg soon followed. In the street outside the bar, Lindberg apparently advanced toward Gaona. Gaona fired four shots, and one of them hit Lindberg in the leg.

Police Lieutenant Leighton saw the incident and arrested Gaona. Gaona was taken from the scene by Officer James Jenck. Gaona told Officer Jenck that "Lindberg was going to beat [me] up and [I] warned him." Later Gaona was interviewed by Lt. Leighton. This taped interview was apparently never transcribed; therefore, we must construct its contents from the grand jury and the trial testimony. Lt. Leighton testified that Gaona said he had argued in the Frontier Bar with Lindberg over Gaona's theft of some cocaine from a relative of Lindberg's, and further argued over Lindberg's dancing at the Frontier with Gaona's former girlfriend. Gaona told Lt. Leighton that he had told Lindberg in the bar that he was armed. Gaona said that "I didn't want to do it," that he was sorry for having shot Lindberg, and that he believed he would probably get twenty years. Gaona also told Lt. Leighton that he shot in the air several times before shooting Lindberg.[2]

The prosecution presented two witnesses to the grand jury: the victim Lindberg and

---

1. Gaona was sentenced to five years' imprisonment. Gaona has not appealed his sentence.

2. Gaona testified at trial that he had told Lt. Leighton that he shot Lindberg to protect himself from a serious beating.

Lt. Leighton. Consequently, the facts were presented in less detail than those outlined above. Nonetheless, some facts were presented which suggested Gaona's theory of self defense. Lt. Leighton told the grand jury that when he first approached Gaona and Lindberg in the street, he thought he was observing a fight. Lt. Leighton related Gaona's warning to Lindberg that he had a gun. Lindberg told the grand jury that he and Gaona had argued in the bar and that when they left the bar, Gaona warned him not to come any closer. However, the prosecution did not introduce Gaona's statement to Officer Jenck that "Lindberg was going to beat [me] up and [I] warned him," or Gaona's statements to Lt. Leighton that "I didn't want to do it" and that he shot in the air several times.

Just before deliberating, the grand jury asked the prosecutor about self defense. The exchange was as follows:

Grand Juror: If somebody actually means to do you bodily harm and you shoot even though it would be [sic] dangerous weapon—a lethal weapon of some sort—would you still be indicted under the same—

Prosecutor: What you're going into— yeah—what you're going into are possible defenses, explanations, contradictions.

Grand Juror: Yeah, but would you be considering—

Prosecutor: There's always a question of self-defense, but that is a defense to be raised, if there is any question of self-defense here.

Grand Juror: So actually you're just basing it on the evidence as presented.

Prosecutor: I'm presenting only the state's case.

The grand jury found a true bill and Gaona was convicted of assault with a dangerous weapon after a jury trial.

## PROSECUTORIAL MISCONDUCT AT THE GRAND JURY

Gaona raises two claims of prosecutorial misconduct at the grand jury. First, he argues that the prosecutor failed to present exculpatory evidence which would support his claim of self defense.[3] Secondly, he argues that the prosecutor was guilty of misconduct before the grand jury in that he failed to instruct the grand jury on self defense and he discouraged the grand jury from considering self defense.[4] These contentions are raised for the first time on appeal and Gaona asks us to notice these issues as "plain error."[5] We decline to do so.

3. In *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979), the supreme court relied on Alaska R.Crim.P. 6(q) which reads as follows:

*Sufficiency of Evidence.* When the grand jury has reason to believe that other available evidence will explain away the charge, it shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses. An indictment shall not be found nor a presentment made upon the statement of a grand juror unless such grand juror is sworn and examined as a witness. The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant. The supreme court, citing *Johnson v. Superior Court*, 15 Cal.3d 248, 124 Cal.Rptr. 32, 539 P.2d 792, 794 (Cal.1975), pointed out that "[t]he grand jury cannot be expected to call for evidence of which it is kept ignorant." The supreme court therefore found that the prosecutor had a duty to present exculpatory evidence to the grand jury. *See also Preston v. State*, 615 P.2d 594, 601–603 (Alaska 1980). Gaona

also argues the prosecutor has a constitutional duty to present exculpatory evidence under the fifth amendment to the United States Constitution, and Article 1, § 8 of the Alaska Constitution which provides in part: "No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury...." Gaona also relies on the state constitutional due process clause, Article 1, § 7, which provides that "[n]o person shall be deprived of life, liberty or property, without due process of law."

4. In *Coleman v. State*, 553 P.2d 40, 47 (Alaska 1976), the court pointed out that the prosecutor "is required to act as the grand jury's legal advisor, to aid but not interfere in its determination of the probability of guilt." *See* ABA Standards for Criminal Justice, The Prosecution Function § 3–3.5 at 3.48 (1980).

5. Alaska R.Crim.P. 47(b) provides:

*Plain error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

■ The Alaska Rules of Criminal Procedure require motions to dismiss an indictment to be made before trial.[6] If a motion to dismiss the indictment is not made before trial, the defendant waives the objection.[7] The purpose of these rules is plain: they require any defect in the indictment to be brought to the attention of the trial court and the prosecution. Assuming there was a defect in the indictment and a motion was filed, the trial court could have ruled on that motion before trial. Had a motion been filed against the indictment, the prosecution, regardless of which way the trial court ruled, could have reindicted. The case against Gaona was strong. Even when Gaona had counsel and testified at trial, a jury rejected his claim of self defense. We also note that there is considerable authority which holds that it is normally unreasonable to use deadly force, such as a handgun, in self defense against a non-deadly attack.[8]

We conclude that had Gaona filed his motion in a timely manner it would not have been difficult to reindict him in the event either the court or the prosecution believed his motion had merit. If we granted motions such as Gaona's the prosecution would frequently be unfairly prejudiced. It is worth noting that Gaona was indicted in May of 1976. Witnesses who testified at the grand jury or trial may not be readily

available to testify; certainly their recollection of the events which led to Gaona's indictment has dimmed. If we allow attacks on indictments for the first time on appeal there would be a strong temptation for counsel to withhold these motions until appeal.

■ An appellant who asks us to notice an issue as plain error bears a heavy burden to convince us that we should depart from the normal rule that pretrial motions should be filed before trial and passed upon by the trial court.[9] We conclude Gaona has not met this burden.

### EFFECTIVE ASSISTANCE OF COUNSEL

Gaona argues that he was denied the effective assistance of counsel because his attorney did not object to the alleged defects in the grand jury proceedings. In *Risher v. State*, 523 P.2d 421, 424 (Alaska 1974), the supreme court confirmed that the sixth amendment to the United States Constitution[10] and Article 1, § 11 of the Alaska Constitution[11] provided for effective assistance of counsel. The court held that to be considered effective, defense counsel must "perform at least as well as a lawyer with

---

**6.** Alaska R.Crim.P. 12(b)(2) provides:

*Pre-Trial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Any or all of the following shall be raised prior to trial:

(2) Defenses and objections based on defects in the indictment or information (other than a failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during pendency of the proceedings);

**7.** Alaska R.Crim.P. 12(e) provides:

*Effect of Failure to Raise Defenses or Objections.* Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to section (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

**8.** *See, generally* W. LaFave & A. Scott, *Criminal Law* § 53, at 391 (1972); AS 11.81.330 and AS 11.81.335.

**9.** *Moreau v. State*, 588 P.2d 275, 279–80 (Alaska 1978).

**10.** U.S.Const. Amend VI reads as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusations; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

**11.** Alaska Const. Art. 1, § 11, provides that an accused is "entitled ... to have the assistance of counsel for his defense."

ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations." [12]

■ A competent counsel does not necessarily have to raise every possible motion on behalf of a client. Pre-trial and trial strategies vary among different competent attorneys. We decline to hold that counsel's failure to attack an indictment automatically renders his legal assistance incompetent or ineffective. Gaona's trial counsel may have had good reason to conclude that a motion to dismiss the indictment would not have been beneficial to his client. As we indicated earlier, there is authority which severely limits a person's ability to use deadly force to defend himself against an unarmed attack.[13] Gaona's counsel may have concluded that any attack on the indictment would consequently fail. Also, as we have indicated earlier, the case against Gaona was strong enough that if counsel did gain a dismissal of the original indictment, Gaona would in all likelihood have been reindicted.[14] We have looked at the record as a whole and conclude that Gaona received effective assistance of counsel within the meaning of *Risher.* The record of the trial indicates Gaona was adequately defended by his trial counsel. Other appropriate pre-trial motions were effectively raised. Gaona's defense was well presented and the witnesses against Gaona were adequately cross-examined. Therefore the trial record is a factor in our decision that Gaona received effective assistance of counsel. All of these factors lead us to reject Gaona's claim that he was not effectively represented.

The judgment is AFFIRMED.

BRYNER, C. J., concurs.

BRYNER, Chief Judge, concurring.

I join in the court's opinion as to the issue of ineffective assistance of counsel. However, I find it necessary to follow a different course from that which the court takes in reaching the conclusion that the plain error rule does not apply to this case.

Although I believe that the court's opinion states cogent reasons for circumspection in applying the plain error doctrine to cases where questions concerning the validity of an indictment are raised for the first time on appeal, I nonetheless think that specific consideration of the merits of Gaona's claim is required by Criminal Rule 47(b) and that *per se* rejection of the applicability of plain error to this case is not warranted.

Criminal Rule 47(b) requires, first, an inquiry whether error affecting a substantive right of the defendant has been shown. *Dorman v. State,* 622 P.2d 448, 457 (Alaska 1981).

The Alaska Constitution, in Article 1, § 8, provides, in pertinent part:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless upon presentment or indictment of a grand jury . . . .

The significance of the grand jury as an independent institution affording protection to persons accused of crime has long been recognized:

> ance of counsel. We are not condoning the second-guessing of trial counsel in making the myriad decisions encountered in a criminal trial, for it is a truism that hindsight furnishes 20–20 vision. All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions."
>
> *Risher v. State,* 523 P.2d 421, 424 (Alaska 1974).

**12.** The Alaska Supreme Court in *Risher* quoted the above language from *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974). *See also Brown v. State,* 601 P.2d 221, 233–234 (Alaska 1979).

**13.** *See* authority cited in note 8 *supra.*

**14.** "Lawyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill in the criminal law. It is only when the ability is below the nadir of that range that we would hold it to constitute a deprivation of effective assist-

Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive prosecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . .

*Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569, 580 (1962). *See also Frink v. State*, 597 P.2d 154, 165 (Alaska 1979); *State v. Gieffels*, 554 P.2d 460, 464 (Alaska 1976).

The relationship of the prosecutor to the grand jury is established as an advisory one by Alaska R.Crim.P. 6(i), which specifies that the district attorney is "to advise [the grand jury] of their duties . . . ." The prosecutor's duty to act in an advisory capacity to the grand jury must at all times be tempered by a respect for the traditional independence of that body:

Where the prosecutor is authorized to act as legal advisor to the grand jury he must appropriately explain the law and express his opinion on the legal significance of the evidence *but he should give due deference to its status as an independent legal body.*

ABA Standards for Criminal Justice, The Prosecution Function § 3–3.5(a) at 3.48 (1980) (emphasis added). Thus, implicit in the prosecutor's duty to advise the grand jury is the obligation to give advice which is correct and does not impinge upon the grand jury's autonomy. The state must not lose sight of the fact that it is the prosecutor who serves the grand jury and not the converse.

In performing its authorized functions, the grand jury is specifically empowered to order the production of evidence and to hear testimony on behalf of the accused, regardless of whether such evidence or testimony is offered at the initiative of the prosecution. *See* Alaska R.Crim.P. 6(q) and (p). *See also Frink v. State*, 597 P.2d at 165–66. The record in the present case shows that the prosecution, by giving the grand jury ill-considered advice and instructions, unduly restricted its authority to function autonomously by effectively fore-

closing it from exercising its independent authority to call for testimony and evidence.

The remarks of the prosecutor quoted by the court in its opinion demonstrate a failure to distinguish between the prosecutor's duty to present evidence and the authority of the grand jury to call for and consider evidence of its own accord. It is well within the province of the grand jury to call for more than the prosecutor may wish to present. Accordingly, the grand jury cannot, by advice of the prosecution, be compelled to restrict its inquiry to "just the state's case."

Beyond the exchange quoted by the court in the text of its opinion, I deem it significant that the prosecutor additionally gave the following admonition to the grand jury:

[A]gain, you know, in your instructions that the judge gave you, you're not here to go into possible defenses or explanations, necessarily. You are to determine what [sic-whether] the evidence, unexplained and uncontradicted, is insufficient [sic—sufficient] to merit conviction.

This instruction misrepresents the proper function of the grand jury, for there is no question that it is in fact within the grand jury's prerogative to inquire "into possible defenses and explanations" if it so desires.

The Alaska Supreme Court, in *Frink v. State*, 597 P.2d at 164–65, reasoned that, unless the grand jury was made aware of evidence tending to negate the defendant's guilt, it could not be expected to exercise its powers to call additional witnesses and to inquire further into issues which it might deem significant. By parallel logic, it seems to me that the grand jury cannot be expected to call for evidence which it would be entitled to hear if it is advised in unequivocal terms by the prosecutor that it has no business doing so. Though it may well be that the prosecutor here was under no obligation to present evidence of self-defense to the grand jury in the first instance, it does not follow that the issue of self-defense was one with which the grand jury could not properly become concerned. Yet here, the remarks of the prosecutor assured

that the grand jury would not pursue its inquiry into this issue.

I would therefore conclude that the remarks of the prosecutor to the grand jury in this case violated his duty under Criminal Rule 6(i) to render accurate advice to the grand jury concerning its duties and to give deference to the independence of the grand jury in providing such advice. Given the vital role played by the grand jury in our criminal justice system, the conclusion appears inescapable that this violation was one which affected Gaona's substantial rights within the meaning of Criminal Rule 47(b).

This conclusion, however, cannot be determinative of the outcome of the case, since the plain error rule requires more. In order to conclude that reversal is warranted by plain error, the error found must not only affect a substantive right of the accused, but it must also be obviously prejudicial. *Dorman v. State*, 622 P.2d at 457; *Tuckfield v. State*, 621 P.2d 1350, 1352 (Alaska 1981).

I am convinced that no obvious prejudice resulted to Gaona from the state's improper comments to the grand jury. As the court's opinion notes, the law imposes strict limitations on the use of deadly force in defense against the threat of non-deadly force. I believe the evidence of self-defense in this case was so slight that even if the grand jury had sought out and considered all available evidence bearing on the issue, there is no reasonable possibility that its decision to indict Gaona would have been affected. For this reason, I conclude that obvious prejudice has not been shown and that plain error has not been established.

My views concerning the strength and weight of the available evidence concerning self-defense lead me to the further conclusion that there was no violation by the state of its duty to present exculpatory evidence to the grand jury. Assuming the prosecution was aware of all potential evidence of self-defense at the time it presented its case to the grand jury, this evidence would have fallen far short of constituting evidence reasonable tending to negate Gaona's guilt. *Frink v. State*, 597 P.2d at 164–66.

For the reasons stated above, I concur with the court's decision that the plain error rule is inapplicable to the issues of prosecutorial misconduct and failure to present exculpatory evidence to the grand jury.