**STATE of Alaska, Petitioner,**

v.

**Michael FREMGEN, Respondent.**

No. S–6926.

Supreme Court of Alaska.

March 22, 1996.

Eric A. Johnson, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for petitioner.

Mauri Long and Raý R. Brown, Dillon & Findley, P.C., Anchorage, for respondent.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, EASTAUGH, JJ., and CARPENETI, J. pro tem.*

### ORDER NO. 33

The Court having previously granted the State's Petition for Hearing, and having considered the parties' briefs and oral arguments, and being fully advised in the premises, hereby enters the following order.

IT IS HEREBY ORDERED:

1. The State's Petition for Hearing is DISMISSED as improvidently granted.

2. We have concluded that the State's Petition for Hearing was improvidently granted for the following reasons:

The State asks to overrule *State v. Guest,* 583 P.2d 836 (Alaska 1978); *Kimoktoak v. State,* 584 P.2d 25 (Alaska 1978); *Alex v. State,* 484 P.2d 677 (Alaska 1971), and *Speidel v. State,* 460 P.2d 77 (Alaska 1969), primarily on the ground that this court misread and misapplied *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

■ We have said:

When a common law court is asked to overrule one of its prior decisions, the principle of stare decisis is implicated. . . . [S]tare decisis is a practical, flexible command that balances our community's competing interests in the stability of legal norms and the need to adapt those norms

to society's changing demands. In balancing these interests, we will overrule a prior decision only when " 'clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent'. . . ." *State v. Dunlop,* 721 P.2d 604, 610 (Alaska 1986) (quoting *State v. Souter,* 606 P.2d 399, 400 (Alaska 1980)). A decision may prove to be originally erroneous if the rule announced proves to be unworkable in practice. *Casey,* 505 U.S. at 853, 112 S.Ct. at 2808. Additionally, a prior decision may be abandoned because of "changed conditions" if "related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine, [or] facts have so changed or come to be seen so differently, as to have robbed the old rule of significant application. . . ." *Id.* at 855, 112 S.Ct. at 2809.

*Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173, 1175–76 (Alaska 1993) (alteration in original).[1]

■ In the present case, we are not persuaded to depart from principles of stare decisis and abandon our *Speidel, Alex, Kimoktoak,* and *Guest* line of cases which established that it would be a deprivation of liberty without due process of law to convict a person of a serious crime without the requirement of criminal intent. In establishing this constitutional doctrine we did not view *Morissette* as controlling precedential authority, but rather were "influenced by and to a great extent followed the United States Supreme Court's opinion[.]" *State v. Campbell,* 536 P.2d 105, 106 (Alaska 1975). It is the general logic and force of *Morissette* that influenced our *Speidel* line of cases, not simply the specific holdings of *Morissette* regarding federal statutory construction.[2]

The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. . . .

---

* Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

1. *See also Beesley v. Van Doren,* 873 P.2d 1280, 1283 (Alaska 1994).

2. In this regard, the Supreme Court in *Morissette v. United States,* 342 U.S. 246, 250–51, 72 S.Ct. 240, 96 L.Ed. 288 (1952), said:

In short, we adhere to the principles articulated in *Speidel, Alex, Kimoktoak,* and *Guest* that, except for public welfare type of offenses, strict criminal liability without some form of *mens rea* is violative of Alaska's Constitution. More particularly, we reaffirm our holding in *Guest* and reiterate that a refusal to allow the mistake-of-age defense to the charge of statutory rape would be to impose criminal liability without a criminal mental element and consequently would violate Alaska's Constitution.

Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law. The unanimity with which they have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental element.
(Footnotes omitted.)