STATE of Alaska, Petitioner,

v.

Wayne SEMANCIK, Respondent.

No. S–10846.

Supreme Court of Alaska.

Oct. 1, 2004.

Terisia K. Chleborad, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Petitioner.

David D. Reineke, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Respondent.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This petition for hearing arises out of a conviction for attempted burglary. Semancik challenged the sufficiency of his attempted burglary indictment for the first time on appeal on the basis that it failed to specify what crime he intended to commit when he entered the dwelling. The court of appeals, bound by the rule in *Adkins v. State*,[1] reversed Semancik's conviction and dismissed the indictment. The State appeals, asking us to overrule *Adkins* to the extent that it (1) requires burglary indictments to specify the defendant's intended crime and (2) permits a defendant to challenge a burglary indictment for the first time on appeal. While we continue to require the State to specify a defendant's intended crime in a burglary indictment, we conclude that the failure to do so is a defect of form, rather than substance. Thus, any challenge must be raised in the trial court or it is waived.

## II. FACTS AND PROCEEDINGS

On July 10, 1998, Wayne Semancik went over to his neighbor Harvel Young's property, apparently to retrieve his missing dog.[2]

Semancik thought that the cries of a baby in Young's house were those of his dog, and he tried to force Young's door open, beating on the doors and walls of the house and shattering a window with a rock. Semancik threatened to "shoot anything that moves" once he gained entry into the house. Semancik broke a small window near the door and punched through the screen, pushing his arm through the broken window.[3] When the state troopers arrived, they subdued and arrested Semancik.

The State charged Semancik with various crimes, including assault in the third degree and attempted burglary in the first degree.[4] The attempted burglary indictment failed to specify the target crime; rather, the indictment alleged that Semancik "intend[ed] to commit the offense of Burglary in the First Degree [and] engage[d] in conduct which constitute[d] a substantial step toward the commission of that crime."[5] Semancik neglected to challenge the indictment or seek a bill of particulars before or during the trial.[6] At trial, Semancik's lawyer adopted the position that the target crime was assault.[7] The jury found Semancik guilty of attempted burglary, rejecting his argument that his intention in entering the house was only to retrieve his dog and not to commit any crime.[8]

On appeal, Semancik, for the first time, challenged the burglary indictment as fatally flawed.[9] A divided court of appeals reversed the conviction on the basis that our decision in *Adkins v. State*[10] was controlling.[11] *Adkins* requires that a burglary indictment specify the defendant's intended crime and holds that an indictment lacking specification of the target crime is "fatally defective,"[12] so that a challenge may be raised for the first

---

1. 389 P.2d 915 (Alaska 1964).

2. *Semancik v. State,* 57 P.3d 682, 682 (Alaska App.2002).

3. *Id.*

4. *Id.* at 683.

5. *Semancik,* 57 P.3d at 683 (quotation marks omitted).

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.*

10. 389 P.2d 915 (Alaska 1964).

11. *Semancik,* 57 P.3d at 686.

12. *Adkins,* 389 P.2d at 916.

time on appeal.[13] The State petitions, asking that we overrule the rule in *Adkins*.

## III. DISCUSSION

### A. Standard of Review

 The principle of stare decisis is implicated in our consideration whether to overrule one of our past decisions.[14] We will only overrule a prior decision when "clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent."[15]

### B. The State Is Required To Include a Defendant's "Intended Crime" in a Burglary Indictment, but Failure To Do So Is a Defect of Form that Cannot Be Raised for the First Time on Appeal.

The State asks us to overrule our decision in *Adkins v. State*,[16] arguing that *Adkins* "mistakenly added an element to the statutory crime of burglary" when it required that the intended crime be specified in a burglary indictment. The State also challenges *Adkins's* conclusion that omission of the specific intended offense in an indictment amounts to a fatal defect that can be challenged for the first time on appeal.[17]

The procedural background of *Adkins* was similar to that of the present case: The defendant's burglary indictment did not specify the crime that he intended to commit, the defendant was convicted, and he challenged the sufficiency of the indictment for the first time on appeal.[18] The *Adkins* court determined that "[i]n the case of burglary the essential elements of the offense are the breaking and entry of a dwelling house by the accused and the intent on his part to commit some specific crime therein."[19] The court then concluded that the "elements are matters of substance and must be set forth in the indictment, otherwise it is fatally defective"[20] and that this defect is "not waived by the failure to object below."[21]

We consider whether a burglary indictment must include the defendant's intended offense and, if so, whether omission of the intended offense is a substantive defect that permits a defendant to challenge the indictment for the first time on appeal.

#### 1. Strong public policy requires that the State include the target crime in a burglary indictment.

 The principle of stare decisis requires that two conditions be met to depart from precedent: We must conclude that the decision was erroneous when it was decided and that the change represents good public policy such that "more good than harm [will] result" from the departure.[22]

Departure from the requirement that the target crime be specified in the indictment raises public policy concerns about adequate notice of criminal charges for defendants. In *Russell v. United States*, the United States Supreme Court established two criteria for measuring the adequacy of an indictment: "whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet"; and whether "in case any other proceedings are taken against [the defendant] for a similar offense, ... the record shows with accuracy to what extent he may plead a former acquittal or conviction."[23] In *Christie v. State*, we

---

13. *Id.* at 915–16; *Semancik*, 57 P.3d at 684.

14. *State v. Fremgen*, 914 P.2d 1244, 1245 (Alaska 1996).

15. *Id.* (internal quotations and citations omitted); *Erickson v. State*, 950 P.2d 580, 587 (Alaska App.1997).

16. 389 P.2d 915 (Alaska 1964).

17. *Id.* at 916.

18. *Id.* at 915.

19. *Id.* at 916.

20. *Id.*

21. *Id.*

22. *Fremgen*, 914 P.2d at 1245 (quotations and citations omitted).

23. 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (internal citations omitted).

affirmed these principles, noting that "the purpose [of the indictment] is to give the defendant notice of the charge against him so as to enable him to prepare his defense and to permit him to claim double jeopardy in the future should he again be charged with the same offense." [24] In *Adkins*, we emphasized the *Russell* protection of "appris[ing] the [defendant] of the specific crime he is supposed to have intended to commit" [25] and we continue to find this policy compelling.

■ Semancik argues persuasively that "without a requirement that the underlying crime be specified, the accused will be forced to go to trial without knowing what type of case the state is going to present." The State responds that in some cases it will be impossible to determine which of many possible crimes the defendant intended to commit, making it unreasonable to require that the State include the intended crime in the indictment. But in *State v. James,* we adopted the *Sullivan* rule for cases in which a jury is instructed disjunctively on alternative methods, which permits jurors to find the defendant guilty of a crime even though they do not agree as to the method by which the crime was committed.[26] In such cases, the State can charge alternative target crimes to avoid a defect and present those alternatives to the jury, obtaining a conviction so long as the jury agrees that the defendant committed the burglary.

After considering the strong public policy of providing defendants with adequate notice of criminal charges, we cannot say that

"more good than harm would result from a departure" [27] from *Adkins's* requirement that the State specify the target crime in a burglary indictment. Thus, we continue to require the State to specify the defendant's intended crime in a burglary indictment.

## 2. Failure to include the target offense in a burglary indictment cannot be challenged for the first time on appeal.

■ We now turn to the question whether *Adkins v. State* correctly permitted a defendant to challenge for the first time on appeal a burglary indictment that failed to identify the defendant's intended crime. The principle of stare decisis requires that we first consider whether the rule in *Adkins* was erroneous when it was decided. Alaska Statute 11.46.310 defines burglary as a crime in which "the person enters or remains unlawfully in a building with intent to commit a crime in the building." [28] In reaching its conclusion, the *Adkins* court noted that "the weight of authority" required that the intended crime be specified in the burglary indictment, citing eleven cases from other jurisdictions for the proposition.[29] But the majority of these cases came from jurisdictions that define burglary in more limited terms, requiring that the defendant enter with the intent to commit a felony or other specific type of crime.[30]

In addressing this issue, several courts, including the court of appeals in considering Semancik's case, have noted the split among

---

24. 580 P.2d 310, 321.

25. *Adkins,* 389 P.2d at 916–17.

26. 698 P.2d 1161, 1165 (Alaska 1985) (discussing the rule adopted for jury unanimity in *People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989 (N.Y.1903)).

27. *Fremgen,* 914 P.2d at 1245.

28. This is the definition of second degree burglary. AS 11.46.300, defining first degree burglary, states:

> (a) A person commits the crime of burglary in the first degree if the person violates AS 11.46.310 and (1) the building is a dwelling; or (2) in effecting entry or while in the building or immediate flight from the building, the person (A) is armed with a firearm; (B) causes or

attempts to cause physical injury to a person; or (C) uses or threatens to use a dangerous instrument.

29. 389 P.2d at 916.

30. *E.g., Bays v. State,* 240 Ind. 37, 159 N.E.2d 393, 397–98 (1959) (requiring that specific felony be included in burglary charge where requisite intent for burglary defined as intent to commit felony); *Lewis v. Mayo,* 127 Fla. 488, 173 So. 346 (1937) (same); *People v. Westerberg,* 274 Mich. 647, 265 N.W. 489 (1936) (same); *Hooks v. State,* 154 Tenn. 43, 289 S.W. 529 (1926) (same); *State v. Allen,* 186 N.C. 302, 119 S.E. 504, 505–06 (1923) (same) (superseded by statute as held in *State v. Worsley,* 336 N.C. 268, 443 S.E.2d 68, 73 (1994)); *Lowe v. State,* 163 Tex.Crim. 578, 294 S.W.2d 394, 397 (App.1956) (same).

jurisdictions as to whether the intended offense must be included in the burglary indictment.[31] Generally, in states where the burglary statute requires that the defendant have intended to commit a specific type of crime, such as a felony or theft, the burglary indictment must allege the intended crime and failure to do so renders the indictment fatally flawed.[32] But in jurisdictions where the burglary statute only requires that the defendant intended to commit "a crime," the burglary indictment is not invalidated for failure to identify the intended crime.[33] The distinction is logical; as the Iowa Supreme Court noted when considering the same issue, common law burglary includes the nature of the intended offense as an element of burglary:

> One of the elements of common-law burglary was that the breaking and entering be "with the intent to commit a felony" therein. At common law[,] no indictment for burglary was sufficient which failed to state the facts necessary to show the particular felony intended to be committed. Thus, at common law, the indictment obviously had to plead facts showing a felony was intended because[,] if anything other than a felony was intended[,] the breaking and entering did not constitute burglary. So it is that those states with burglary statutes which still require an intent to commit a felony, or intent to commit a felony or larceny, or intent to commit other designated crimes, can logically require that a specific intended crime be alleged and proved. There is no similar reason to require it in [a state] where burglary is a statutory offense and where [the] burglary

statutes require only an intent to commit any crime.[34]

The Alaska statute requires only that the defendant intend to commit a crime, placing Alaska in the category of jurisdictions holding that failure to list the specific offense is not fatal to a burglary indictment. The *Adkins* court erroneously relied on the "weight of authority," failing to take into account the language of the Alaska statute which does not require inclusion of the specific intended crime as an element of the offense. Because we conclude that the specific intended offense is not an element of the crime of burglary, an indictment failing to include the offense is not fatally defective on this basis.

Having determined that the *Adkins* rule—which holds that failure to include the intended offense in the indictment amounts to a fatal defect that can be raised for the first time on appeal[35]—was originally erroneous, the principle of stare decisis next requires us to consider whether "more good than harm [will] result from a departure from precedent."[36] Alaska Criminal Rules 7 and 12 represent our policy that challenges to indictments should be brought before trial. Criminal Rule 12(b) lists the pretrial motions that "shall be raised prior to trial," including "defenses and objections based on defects in the indictment or information."[37] Failure to object before trial constitutes a waiver of the objection.[38] And Criminal Rule 7 explicitly announces Alaska's policy on defects of form: "No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form in the indictment

---

31. *Semancik v. State*, 57 P.3d 682, 684–85, 685 n. 9 & 10 (Alaska App.2002) (identifying multiple cases illustrating the pattern); *State v. Mesch*, 574 N.W.2d 10, 13 (Iowa 1997); *State v. Bergeron*, 105 Wash.2d 1, 711 P.2d 1000, 1008 (1985).

32. *Semancik*, 57 P.3d at 684, 684 n. 9; *Mesch*, 574 N.W.2d at 13, 14; *Bergeron*, 711 P.2d at 1008.

33. *Semancik*, 57 P.3d at 684–85; *Mesch*, 574 N.W.2d at 13, 14; *Bergeron*, 711 P.2d at 1008.

34. *Mesch*, 574 N.W.2d at 13 (citing *Bergeron*, 711 P.2d at 1008) (quotations and ellipses omitted).

35. 389 P.2d at 915–16.

36. *Fremgen*, 914 P.2d at 1245 (quotations omitted).

37. Alaska Criminal Rule 12(b)(2).

38. Alaska Criminal Rule 12(e) states:

> Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to section (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

which does not tend to prejudice the substantial rights of the defendant." [39]

In *Gaona v. State,* the court of appeals described the purpose of the procedural rules as "requir[ing] any defect in the indictment to be brought to the attention of the trial court and the prosecution." [40] The *Gaona* court listed various undesirable effects of allowing defendants to challenge indictments for the first time on appeal: The trial court is denied the opportunity to rule on the motion before trial; the prosecution is unable to reindict; witnesses' recollection of events may dim; and defendants are tempted to withhold these motions until appeal.[41] And when the State mistakenly fails to specify the intended crime in the indictment, any ambiguity caused by this defect may be remedied by moving for a bill of particulars.[42] It is simply against public policy to waste judicial resources by permitting defendants to knowingly refrain from challenging an indictment until after conviction.

Because this aspect of the *Adkins* rule was originally erroneous and more good than harm will result from the departure, we overrule *Adkins v. State* to the extent that it holds that a failure to include the intended offense in a burglary indictment is a defect of substance that can be raised at any time. But we continue to require that the State identify the intended offense in a burglary indictment and conclude that a failure to do so is a defect of form that must be raised before trial.

### C. The Retroactive Application of *Adkins* to Semancik

■ Because our decision establishes a new rule, we must consider whether to apply it retroactively to Semancik. We consider three factors when deciding whether to apply a new rule retroactively or prospectively: (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect on the administration of justice of a retroactive application of the new rule.[43]

The new rule's purpose, the first factor in the test for retroactivity, is to conserve justice system resources by preventing the reversal of a conviction due to a technical defect in the indictment when the defect is challenged for the first time on appeal. Application of the new rule to Semancik promotes this policy. The second factor, the extent of reliance on the old rule, supports retroactive application. While it is true that a defendant may have relied on the old rule, realizing that an indictment was defective prior to trial but waiting until the verdict before raising an objection to it, a defendant's ability to "pull the ace from his sleeve" [44] is not the type of reliance we want to encourage as a matter of policy. The third factor, the effect on the administration of justice, also supports retroactive application; the new rule will not burden the trial court, as it permits trial judges to correct technical defects prior to trial and prevents indictments from being challenged on this basis for the first time on appeal. Thus, all three factors favor application of our decision to Semancik.

Because we are applying our decision retroactively we must also determine whether Semancik's rights were prejudiced due to lack of notice. Criminal Rule 7(c) confines the ability to challenge a judgment based on defects of form in an indictment to those defects that "tend to prejudice the substantial rights of the defendant." [45] While Sem-

---

**39.** Alaska R.Crim. P. 7(c).

**40.** 630 P.2d 534, 537 (Alaska App.1981).

**41.** *Id.*

**42.** *See People v. Williams,* 984 P.2d 56, 62–63 (Colo.1999); *State v. Worsley,* 336 N.C. 268, 443 S.E.2d 68, 74 (1994) (defendant could have remedied lack of definiteness with request for bill of particulars); *State v. Waters,* 436 So.2d 66, 69 (Fla.1983) (same).

**43.** *State v. Wickham,* 796 P.2d 1354, 1358–59 (Alaska 1990) (citing *State v. Glass,* 596 P.2d 10, 13 (Alaska 1979)).

**44.** *Semancik,* 57 P.3d at 686.

**45.** Criminal Rule 7(c) provides in part:
No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form in the indictment which does not tend to prejudice the substantial rights of the defendant.

ancik points out that the prosecutor repeatedly referred to Semancik's intent to commit "a crime" without specifying the intended crime, the record suggests that Semancik was not prejudiced by the omission, and he fails to present any evidence to the contrary.

Semancik was charged with seven counts of assault in the third degree along with his attempted burglary charge, providing Semancik with notice of the State's theory of the underlying crime and allowing Semancik to prepare his defense.[46] Moreover, Semancik's defense at trial was that he did not intend to commit any crime: In his closing, Semancik's attorney argued to the jury that "[Semancik's] intent to get into the house was to go get his dog. That was his intent, not to commit a crime." Thus, there is no evidence that Semancik's substantial rights were prejudiced by the defect of form in the indictment.

## IV. CONCLUSION

Because we apply the new rule retroactively and because Semancik's rights were not prejudiced by the indictment, we REVERSE the court of appeals's decision.

---

**46.** Although Semancik's proposed jury instruction required the jury to find that Semancik entered the building "with the intent to commit the crime of Assault," there is no evidence that Semancik objected to the jury instruction used which required the jury to find that Semancik entered the building "with the intent to commit a crime." *See State v. Frazier*, 73 Ohio St.3d 323, 652 N.E.2d 1000, 1009 (1995) (concluding that when intended crime not specified in burglary indictment, other charges provided defendant adequate notice of intended crime).